IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

JORDI SANDOVAL RODRIGUEZ,  )
)
        Petitioner,  )
)
   v.  )        1:24-cv-651 (LMB/WMP)
)
PAUL PERRY, et al.,  )
)
        Respondents.  )
)

## MEMORANDUM OPINION

For the past 14 months, Petitioner Jordi Sandoval Rodriguez ("petitioner" or "Sandoval"), a citizen of El Salvador with Special Immigrant Juvenile status, has been detained in immigration custody at the Caroline Detention Center in Bowling Green, Virginia while the United States Citizenship and Immigration Services ("USCIS") adjudicates his Form I-485 Application to Adjust Status. His detention began on June 15, 2023, when Immigration and Customs Enforcement ("ICE") arrested him and placed him into removal proceedings for being an alien present without admission or parole under Section 212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA"). Throughout this detention, Sandoval has never received an individualized bond hearing because respondents contend that he is subject to mandatory detention under 8 U.S.C. § 1225(b).

Sandoval seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2241, claiming that he is detained as an "alien present" pursuant to 8 U.S.C. § 1226(a) and is entitled to an individualized bond hearing. Because he has been detained for 14 months without such a hearing, Sandoval contends that the Fifth Amendment's due process protections entitle him to immediate release or,

in the alternative, a bond hearing before an immigration judge at which the government bears the burden of proving by clear and convincing evidence that he poses a risk of flight or danger to the community. [Dkt. No. 1 at ¶ 6]. Sandoval also claims that respondents' refusal to provide him with a bond hearing violates the Administrative Procedures Act ("APA") and the INA. Respondents oppose Sandoval's request for relief, claiming that he is properly detained as an "arriving alien" pursuant to 8 U.S.C. § 1225(b) and is not entitled to any process beyond that which the statute provides.

For the reasons that follow, Sandoval's habeas petition will be granted in part and denied in part, and respondents will be ordered to promptly provide petitioner with an individualized bond hearing at which the government will bear the burden of proving by clear and convincing evidence that Sandoval should not be released on bond because he poses a flight risk or danger to the community.[1]

## I. BACKGROUND

On December 23, 2013, Sandoval, who was eight years old at the time, arrived at the Port of Entry in Hidalgo, Texas, and was placed into removal proceedings as an "arriving alien" under INA § 212(a)(7)(A)(i)(I) and ordered detained. [Dkt. Nos. 1-2 & 1-3]. When arrested, Sandoval did not indicate that he intended to apply for asylum or had a fear of persecution. Because he arrived without a parent or guardian, United States Customs and Border Protection ("CBP") designated Sandoval an "unaccompanied minor" and transferred him to the Office of Refugee Resettlement, which subsequently reunited him with family in New York. [Dkt. Nos. 1-4 & 1-5].

---

[1] Because the Court is granting relief on due process grounds, it need not address Petitioner's APA or INA claims.

2

On November 10, 2016, Sandoval filed a petition for Special Immigrant Juvenile (SIJ) status with USCIS. [Dkt. No. 1-8 at 2-3]. That same month, an immigration judge administratively closed Sandoval's removal proceedings pending adjudication of his SIJ petition. Id. On January 30, 2017, USCIS approved Sandoval's SIJ petition, thereby granting him SIJ status. [Dkt. No. 1-6].

On June 11, 2020, Sandoval was arrested and charged in Suffolk County, New York with felony attempted robbery. Because he was 15 years old at the time of the offense, the Suffolk County Court adjudicated him a "youthful offender" and sentenced him to 60 days of detention and five years of probation. [Dkt. No. 1-7]. The court's Certificate of Disposition – Youthful Offender Adjudication states that "[a] youthful offender adjudication is not a judgment of conviction for a crime or any other offense. . . ." Id.

Thereafter, Sandoval moved from New York to Virginia and his probation was transferred to the Virginia Parole and Probation Office. In March 2023, a Virginia probation officer contacted ICE about Sandoval. [Dkt. No. 1-8 at 2]. ICE queried Sandoval's immigration record and determined that he was a national and citizen of El Salvador who was subject to removal under INA § 212(a)(6)(A)(i). Id. On June 15, 2023, shortly after his eighteenth birthday, ICE arrested and detained Sandoval and placed him into removal proceedings. Id. On August 8, 2023, an immigration judge denied Sandoval's request for a bond hearing on the basis that she lacked jurisdiction because Sandoval was "charged as an Arriving Alien." [Dkt. No. 1-9].

On September 28, 2023, Sandoval, through counsel, submitted an I-485 Application to Adjust Status to Lawful Permanent Resident (LPR) status based on his SIJ status [Dkt. No. 11]. As a result, an immigration judge administratively closed Sandoval's removal proceedings

pending adjudication of that application. [Dkt. No. 1-10]. Although ICE officials at the Caroline Detention Center were advised of Sandoval's pending I-485 application and the administrative closure of his removal proceedings, they denied Sandoval's request to be released pending the adjudication of the application, explaining that an expedited review of his application had been sought. [Dkt. No. 1-11]. On November 29, 2023, USCIS denied Sandoval's application as incomplete. [Dkt. No. 1-13]. The application was resubmitted on December 22, 2023, and Sandoval remains in immigration custody pending the adjudication of that application. [Dkt. No. 11 at 21].

Sandoval, through counsel, filed the present habeas petition on April 19, 2024, in which he primarily argues that the Due Process Clause prohibits his prolonged detention without an individualized bond hearing to assess whether he is a flight risk or danger to the community. Accordingly, Sandoval requests that the Court order either his immediate release or that he be provided with a bond hearing before an immigration judge. [Dkt. No. 1 at ¶ 6]. In addition, Sandoval requests that the Court specify that the government bears the burden of proof at the bond hearing by clear and convincing evidence. Id. Respondents oppose Sandoval's request for relief on the basis that he is subject to mandatory detention and is not entitled to any process beyond that which is provided in the statute under which he is detained. [Dkt. No. 16 at 11].

## II. DISCUSSION

### A. Detention Under § 1226(a) or § 1225(b)

The federal habeas corpus statute gives a district court jurisdiction to review immigration-related detention cases. See 28 U.S.C. § 2241(c)(3); Demore v. Kim, 538 U.S. 510, 517-18, (2003) (holding federal courts have jurisdiction to review challenges to pre-removal detention). Sandoval argues that the government is detaining him as an "alien present" in the

4

United States pursuant to 8 U.S.C. § 1226(a) and, as a result, he is entitled to an individualized

bond hearing wherein the government bears the burden of proving by clear and convincing

evidence that he should be detained.  Respondents argue that Sandoval is detained as an "arriving

alien" pursuant to § 1225(b) and is not entitled to a bond hearing.

Section 1225 applies to "arriving aliens" and "certain other aliens who have not been

admitted or paroled."  8 U.S.C. § 1225(b).  Regulations broadly define an "arriving alien" as

"[a]n applicant for admission coming or attempting to come into the United States . . . whether or

not to a designated port-of-entry, and regardless of the means of transport."  8 C.F.R.

§ 1001.1(q).  Pursuant to § 1225, "arriving aliens" are subject to expedited removal proceedings

"without further hearing or review unless the alien indicates either an intention to apply for

asylum . . . or a fear of persecution."  8 U.S.C. § 1225(b)(1)(A)(i).

In contrast, § 1226 generally governs the process of arresting and detaining aliens present

in the United States pending their removal.  See Jennings v. Rodriguez, 583 U.S. 281, 288

(2018).  "Federal regulations provide that aliens detained under § 1226(a) receive bond hearings

at the outset of detention."  Id. at 306 (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)).  Under

§ 1226(a) the Attorney General "may release the alien" detained pursuant to § 1226 either on

bond or under conditional parole.

On December 23, 2013, when ICE first placed Sandoval into removal proceedings, it did

so because Sandoval was an arriving alien under INA § 212(a)(7)(A)(i)(I).  [Dkt. No. 1-2].

Consequently, he was subject to mandatory detention under 8 U.S.C. § 1225(b)(2).  It is this

arriving alien status—from more than 10 years ago when Sandoval first arrived at the Southwest

border as an eight-year-old boy—that is the sole basis for respondents' contention that Sandoval

is not entitled to a bond hearing now.  Although respondents do not dispute that USCIS granted

Sandoval SIJ status in 2017, they fail to acknowledge the significant legal impact of such status. For purposes of SIJ status, the INA defines a "special immigrant" as "an immigrant who is present in the United States." 8 U.S.C. § 1101(a)(27)(j). As explained in more detail below, SIJ status gives significant benefits and procedural protections to alien children and provides them with opportunities "to strengthen their connections to the United States, pending a determination of their applications for adjustment of status." Osorio-Martinez v. Attorney Gen. United States of Am., 893 F.3d 153, 170 (3d Cir. 2018).

Sandoval's SIJ status weighs in favor of finding that, when ICE arrested and detained him in June 2023, he was an "alien present" in the United States and was entitled to a bond hearing under § 1226(a). This is also consistent with ICE's records, which clearly state that Sandoval is subject to removal as an alien present under INA § 212(a)(6)(A)(i), and not as an arriving alien under § 212(a)(7)(A)(i)(I). In ICE's alien removal case tracking system, ICE identifies Sandoval as "a national and citizen of El Salvador [who] is subject to removal under § 212(a)(6)(A)(i) of the Immigration and Nationality Act." [Dkt. No. 1-8 at 2.] Similarly, Sandoval's Form I-213 Record of Deportable/Inadmissible Alien, dated June 16, 2023, lists Sandoval's current administrative charges as "212a6Ai – ALIEN PRESENT WITHOUT ADMISSION OR PAROLE." [Dkt. No. 21-1 at 8]. Because Sandoval was awarded SIJ status in January 2017, which converted him from being an arriving alien to an alien present in the United States, he was entitled to a bond hearing in June 2023 under § 1226(a). See 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1). And because Sandoval has been in custody for 14 months while adjudication of his Form I-485 Application to Adjust Status has been pending, he has a Fifth Amendment Due Process right to an individualized bond hearing.

B.  Due Process

The Supreme Court has held that "[o]nce an alien enters the country, the legal

circumstance changes, for the Due Process Clause applies to all persons within the United States,

including aliens, whether their presence is lawful, unlawful, temporary, or permanent.  Zadvydas

v. Davis, 533 U.S. 678, 682 (2001).  Accordingly, the Court must now determine what sort of

process is due to Sandoval.  Zinermon v. Burch, 494 U.S. 113, 127 (1990) ("Due process . . . is a

flexible concept that varies with the particular situation.").

1.  Substantive Due Process

Sandoval alleges that his prolonged detention violates his right to substantive due process

and requests that he be released immediately.  Immediate release will not be granted for the

reasons that follow.

"[A]liens . . . have a substantive due process right to be free of arbitrary confinement

pending deportation proceedings."  Doherty v. Thornburgh, 943 F.2d 204, 209 (2d Cir. 1991).

"It is axiomatic, however, that an alien's right to be at liberty during the course of deportation

proceedings is circumscribed by considerations of the national interest."  Id.  Because the

government has a substantial interest in ensuring a noncitizen's appearance at immigration

hearings and in protecting the community from danger, Sandoval is not entitled to immediate

release.  See Rodriguez-Diaz v. Garland, 53 F.4th 1189, 1213 (9th Cir. 2022) (recognizing that

while both interests are substantial, "the private interest of a detained alien under § 1226(a) is

lower than that of a detained U.S. citizen, and the governmental interests are significantly higher

in the immigration detention context.").  Rather, Sandoval's liberty interests must be weighed

against the government's interests.  Accordingly, the Court denies the portion of the petition that

is based on substantive due process grounds as well as Sandoval's associated request for immediate release.

    2.  <u>Procedural Due Process</u>

    Sandoval also alleges that his prolonged detention violates his right to procedural due process and requests that he receive an individualized bond hearing.  The petition will be granted on this ground for the reasons that follow.

    a.  Special Immigrant Juvenile Status

    To determine whether procedural due process requires that Sandoval receive a bond hearing, the Court must consider his status as a Special Immigrant Juvenile.  In 1990, Congress established SIJ status "to protect abused, neglected or abandoned children who . . . illegally entered the United States. . . ." <u>Osorio-Martinez</u>, 893 F.3d at 163 (internal quotation marks and citations omitted).  In creating SIJ status, Congress included in the INA certain protections against removal for this class of young immigrants.  <u>See</u> 8 U.S.C. § 1227(c) (certain grounds for deportation "shall not apply to a special immigrant described in section 101(a)(27)(J) based upon circumstances that existed before the date the alien was provided such special immigrant status.").  Accordingly, although a juvenile with SIJ status can be removed on certain grounds, such as having been convicted of a serious criminal offense, he cannot be removed for having entered the country illegally.  <u>See</u> <u>id</u>.

    To obtain SIJ status, an alien child must meet a set of rigorous, congressionally defined eligibility criteria, including that a juvenile court find it would not be in the child's best interest to return to his country of nationality and that he cannot be reunified with one or both of parents because of abuse, abandonment, neglect or similar basis under state law.  8 U.S.C. § 1101(a)(27)(J); 8 C.F.R. § 204.11(c).  SIJ status may be granted only upon the approval of

USCIS and the consent of the Secretary of Homeland Security.  8 U.S.C. § 1101(a)(27)(J);

Memorandum from Donald Neufeld, Acting Assoc. Dir., Domestic Operations & Pearl Chang,

Acting Chief, Office of Policy & Strategy, USCIS, <u>Trafficking Victims Protection</u>

<u>Reauthorization Act of 2008: Special Immigrant Juvenile Status Provisions</u> 3 (Mar. 24, 2009),

https://www.uscis.gov/sites/default/files/USCIS/Laws/Memoranda/Static_Files_Memoranda/200

9/TVPRA_SIJ.pdf (citing H.R. Rep. No. 105-405, at 130 (1997) (Conf. Rep.)).

 "Once attained, SIJ classification conveys a host of important benefits."  <u>Joshua M. v.</u>

<u>Barr</u>, 439 F. Supp. 3d 632, 659 (E.D. Va. 2020) (explaining that "the INA automatically exempts

SIJ designees from a set of generally applicable grounds of inadmissibility and provides that

other grounds of inadmissibility also may be waived at the Attorney General's discretion").

"Additionally, Congress has granted SIJ designees various forms of support within the United

States, such as access to federally funded educational programming and preferential status when

seeking employment-based visas."  <u>Id.</u> (citing 8 U.S.C. §§ 1232(d)(4)(A), 1153(b)(4)).  These

benefits reflect Congress' intent "to assist a limited group of abused children to remain safely in

the country . . . as a ward of the United States with the approval of both state and federal

authorities."  <u>Osorio-Martinez,</u> 893 F.3d at 168 (citing <u>Garcia v. Holder</u>, 659 F.3d 1261, 1271

(9th Cir. 2011)).

 More importantly, "Congress also afforded these aliens a host of procedural rights

designed to sustain their relationship to the United States and to ensure they would not be

stripped of SIJ protections without due process." <u>Id.</u>, 893 F.3d at 171 (citing 8 U.S.C. § 1155; 8

C.F.R. § 205.2; 7 USCIS Policy Manual, pt. F, ch. 7 (Mar. 21, 2018)).

> SIJ status, once granted, may not be revoked except "on notice," 8 C.F.R. § 205.2,
> and upon the Government's compliance with a series of procedural safeguards: The
> Secretary of Homeland Security must find "good and sufficient cause" for

revocation; the agency must provide notice of intent to revoke; and the SIJ designee must be given the opportunity to present evidence opposing revocation.

Id. at 163-164 (citing 8 U.S.C. § 1155; 8 C.F.R. § 205.2; see 7 USCIS Policy Manual, pt. F, ch. 7 (Mar. 21, 2018)).  SIJ status is a "special recognition and opportunity to make contacts in this country, and for that reason should not be wrenched away without adequate process."  Garcia 659 F.3d at 1271.

In Osorio-Martinez, a case involving the expedited removal of juvenile immigrants, the Third Circuit Court of Appeals explained the significant benefits and protections that SIJ status confers on alien children.  The Third Circuit found that "SIJ designees enjoy at least 'minimum due process rights' by virtue of their [status]," and that their "statutory rights and attendant constitutional rights . . . bespeak a substantial legal relationship between them and the United States" that distinguishes them from arriving aliens who cannot lay claim to constitutional rights. 893 F.3d at 171.  Because of their rights—

> SIJ designees stand much closer to lawful permanent residents than to aliens present in the United States for a few hours before their apprehension.  Indeed, [SIJ designees] are a hair's breadth from being able to adjust their status, pending only the availability of immigrant visas and the approval of the Attorney General.  This proximity to LPR status is significant because the lawful permanent resident is the quintessential example of an alien entitled to "broad constitutional protections."

Id. at 174 (internal citation omitted) (quoting Castro v. U.S. Dep't of Homeland Sec., 835 F.3d 422, 447 (3d Cir. 2016); Kwong Hai Chew v. Holding, 344 U.S. 590, 596 (1953)).

It is undisputed that USCIS granted Sandoval SIJ status in January 2017, when he was 11 years old.  When ICE arrested and detained him in June 2023, he had been an SIJ designee for more than six years—that is, he had been living in the United States with a special status intended to promote his ties to this country for more than a third of his life.  He still has SIJ

10

status today and is awaiting adjudication of his application to become an LPR.[2]  Given that

Sandoval is an SIJ designee who is accorded significant benefits and procedural protections that

put him "a hair's breadth from being able to adjust [his] status," the Court finds that he is entitled

to procedural due process under the Fifth Amendment.  Procedural due process mandates that

Sandoval receive a prompt, individualized bond hearing.

> b.  Standard of Proof

"The fundamental requirement of due process is the opportunity to be heard at a

meaningful time and in a meaningful manner." Mathews v. Eldridge, 424 U.S. 319, 333 (1976)

(quotation omitted).  "In determining 'what process is due,' we recognize that 'due process is

flexible and calls for such procedural protections as the particular situation demands.'" Francis

v. Fiacco, 942 F.3d 126, 142-43 (2d Cir. 2019) (quoting Morrissey v. Brewer, 408 U.S. 471, 481

(1972)).

Having determined that due process demands that Sandoval receive an individualized

bond hearing, the question remains as to what procedures apply at the hearing.  Sandoval

contends that to justify his continued detention, the government should bear the burden of

proving by clear and convincing evidence that he poses a flight risk or danger to the community.

Respondents respond that the regulations governing bond hearings for detained noncitizens, 8

C.F.R. §§ 236.1(c)(8), 1236.1(c)(8), apply and that the burden is on Sandoval to demonstrate to

the satisfaction of the immigration judge that his release would not pose a danger to property or

---

[2] As there is no age limit to apply for LPR status as an SIJ, SIJ status does not "expire." See USCIS, Green Card Eligibility Based on Special Immigrant Juvenile Classification (Aug. 24, 2024), https://www.uscis.gov/green-card/green-card-eligibility-categories.  If an SIJ designee properly filed his SIJ application when he was under 21 years of age, USCIS will not deny his LPR application even if was over 21 when he applied for LPR status. Id.

persons and that he is likely to appear for future proceedings.  [Dkt. No. 16 at 27-29].  The issue

of who bears the burden of proof as well as what burden applies is not settled.

 The cases that respondents cite for the proposition that Sandoval should bear the burden

of proof at his detention hearing are neither authoritative nor persuasive.  For example, both

Zadvydas and Hiu Lu addressed the detention of aliens who had already been ordered removed

and found it was the aliens' burden to show that there was no significant likelihood of removal in

the reasonably foreseeable future.  Zadvydas, 533 U.S. at 701; Hiu Lu v. Lynch, 1:15-cv-1100,

2016 WL 375053, at *6 (E.D. Va. Jan. 29, 2016).  Those facts are not before the Court here.

 Respondents rely on dicta in Guzman Chavez v. Hott, 940 F.3d 867 (4th Cir. 2019), rev'd

on other grds, Johnson v. Guzman Chavez, 594 U.S. 523 (2021) for their position that the alien

bears the burden of proving he is eligible for conditional release; however, in that decision, the

Fourth Circuit did not determine the burden of proof that applies in a noncitizen's individualized

bond hearing.  Rather "the single question of statutory interpretation" before the court was

"whether § 1226 or § 1231 governed the detention of noncitizens and, specifically, their

entitlement to individualized bond hearings."  Id. at 882.  Accordingly, Guzman Chavez does not

resolve the issue.

 Respondents also rely on the decisions in Cardona Tejada v. Crawford, 1:21-cv-314,

2021 WL 2909587 (E.D. Va. May 19, 2021), Palomares Gastelum v. Barr, 1:19-cv-1428, Dkt.

No 28 at 16 (E.D. Va. Feb. 19, 2020), and Mauricio-Vazquez v. Crawford, 1:16-cv-1422, 2017

WL 1476349 (E.D. Va. Apr. 24, 2017), which did not require the government to justify detention

by clear and convincing evidence.  Nevertheless, those cases explained that courts throughout the

country are not uniform on the applicable standard.  Cardona Tejada, 2021 WL 2909587, at *4

n.9 (citing Velasco Lopez v. Decker, 978 F.3d 842, 856 n.14 (2d Cir. 2020) for the proposition

that many courts require the government to justify detention by clear and convincing evidence);
Mauricio-Vazquez, 2017 WL 1476349, at *5 (E.D. Va. Apr. 24, 2017) ("So far, two courts of
appeals to reach this question have deferred to existing bond regulations, and three courts of
appeals have determined that the burden of proof should be placed on the government . . . . The
sixth court of appeals to consider the matter did not explicitly state a standard."); Palomares
Gastelum, No. 1:19-cv-1428, slip op. at 16 (E.D. Va. Feb. 19, 2020) ("With respect to
individualized bond hearings, jurists in this district have set forth different procedures.").
Notably, the Fourth Circuit has not decided the issue.

   This Court examined the issue in Haughton v. Crawford, 221 F. Supp. 3d 712, 714 (E.D.
Va. 2016) and Portillo v. Hott, 322 F. Supp. 3d 698, 709 (E.D. Va. 2018), in which aliens sought
habeas relief under the Due Process Clause from prolonged immigration detention.  This Court
determined that, in light of the ongoing infringement of the alien's liberty interest and the strong
tradition of placing the burden justifying civil detention on the government, the "balance
between individual and government interests requires that the burden of justifying petitioner's
continued detention falls upon the government," which had to "demonstrate by clear and
convincing evidence that petitioner's ongoing detention is appropriate to protect the community
and ensure petitioner's appearance at future proceedings."  Haughton, 221 F. Supp. 3d at 717;
Portillo, 322 F. Supp. 3d at 709; see also Mbalivoto v. Holt, 527 F. Supp. 3d 838, 852 (E.D. Va.
2020) ("[D]ue process requires that the Government bear the ultimate burden of persuasion that
Petitioner is a flight risk or a danger to the community to justify denial of bond in light of the full
range of bond conditions available under the circumstances."); Diop v. ICE/Homeland Sec., 656
F.3d 221, 235 (3rd Cir. 2018) ("[W]hen detention becomes unreasonable, the Due Process
Clause demands a hearing, at which the government bears the burden of proving that continued

detention is necessary to fulfill the purposes of the detention statute."); German Santos v. Warden Pike Cty. Corr. Facility, 965 F.3d 203, 213-14 (Third Cir. 2020) ("When the Government seeks to take more than just money from a party, we typically hold the Government to a standard of proof higher than a preponderance of the evidence."); Singh v. Holder, 638 F.3d 1196, 1203-04 (9th Cir. 2011) ("Because it is improper to ask the individual to 'share equally with society the risk of error when the possible injury to the individual'—deprivation of liberty—is so significant, a clear and convincing evidence standard of proof provides the appropriate level of procedural protection.") (internal citation omitted).

The Haughton and Portillo decisions remain good authority and are persuasive on the merits. Accordingly, to afford Sandoval the process he is due at the bond hearing, the government must demonstrate by clear and convincing evidence that Sandoval is either a flight risk or a danger to the community. If the government fails to meet this burden, Sandoval must be released on bond.

### III.  Conclusion

For the reasons stated above, Sandoval's habeas petition will be granted in part and denied in part by an Order to be issued with this Memorandum Opinion, which will require respondents to promptly provide Sandoval with an individualized bond hearing at which they will bear the burden of proving by clear and convincing evidence that he should not be released on bond because he poses a risk of flight or danger to the community.

Entered this _3 nd_ day of September 2024.

Alexandria, Virginia

/s/

Leonie M. Brinkema
United States District Judge

14